**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

ELAINE WANG,                                          :
                                                     :
                        Plaintiff,                    :     Civil Action No. 1:21-cv-10338
                                                     :
v.                                                   :
                                                     :     **COMPLAINT FOR VIOLATIONS OF**
NEOPHOTONICS CORPORATION,                            :     **SECTIONS 14(a) AND 20(a) OF THE**
TIMOTHY S. JENKS, CHARLES J. ABBE,                   :     **SECURITIES EXCHANGE ACT OF**
BANDEL CARANO, KIMBERLY Y.                           :     **1934**
CHAINEY, YANBING LI PH.D, RAJIV                      :
RAMASWAMI PH.D, SHERI L. SAVAGE,                     :     **JURY TRIAL DEMANDED**
MICHAEL J. SOPHIE, and IHAB TARAZI,                  :
                                                     :
                        Defendants.                   :
--------------------------------------------------------

        Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.      This is an action brought by Plaintiff against NeoPhotonics Corporation

("NeoPhotonics or the "Company") and the members NeoPhotonics board of directors (the

"Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), in connection with the proposed acquisition of NeoPhotonics by affiliates of Lumentum

Holdings Inc. ("Lumentum").

        2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on December 1, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Neptune Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Lumentum, will merge with and into NeoPhotonics with NeoPhotonics surviving the merger and becoming a wholly owned subsidiary of Lumentum (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each NeoPhotonics common share issued and outstanding will be converted into the right to receive $16.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked NeoPhotonics stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Union Square Advisors Securities LLC ("Union Square Advisors") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NeoPhotonics stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because the Company's stock is traded on the New York

Stock Exchange, headquartered in this District, and the proxy solicitor for the Company,

Georgeson, is also headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of NeoPhotonics common

stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Timothy S. Jenks has served as a member of the Board since

April 1998 and is the Company's President, Chief Executive Officer, and the Chairman of the

Board.

11.     Individual Defendant Charles J. Abbe has served as a member of the Board since

October 2012 and is the Lead Director.

12.     Individual Defendant Bandel Carano has served as a member of the Board since September 2006.

13.     Individual Defendant Kimberley Y. Chainey has served as a member of the Board since March 2021.

14.     Individual Defendant Yanbing Li Ph.D has served as a member of the Board since July 2019.

15.     Individual Defendant Rajiv Ramaswami Ph.D has served as a member of the Board since March 2014.

16.     Individual Defendant Sheri L. Savage has served as a member of the Board since July 2021.

17.     Individual Defendant Michael J. Sophie has served as a member of the Board since November 2006.

18.     Individual Defendant Ihab Tarazi has served as a member of the Board since October 2015.

19.     Defendant NeoPhotonics is incorporated in Delaware and maintains its principal offices at 3081 Zanker Road, San Rose, California 95134.  The Company's common stock trades on the New York Stock Exchange under the symbol "NPTN."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

22.    NeoPhotonics develops, manufactures, and sells optoelectronic products that transmit and receive high speed digital optical signals for cloud and hyperscale data center internet content provider and telecom networks worldwide. It offers high speed products, including transmitter, receiver, and switching products for 400G and optical transmission applications over distances of 2 to 2,000 kilometers; ultra-narrow linewidth tunable lasers that generate ultra-pure wavelength or color for coherent transmission; and integrated coherent receivers (ICRs) that decode the phase and polarization encoded coherent optical signals. The Company also provides pluggable coherent transceivers that combine ultra-narrow linewidth laser with coherent receiver and performance coherent modulator; and 100G products for data center applications. In addition, it offers multi-cast switching solutions for 100G and above coherent systems; and network products and solutions, such as arrayed wavelength gratings, multiplexers, and filters used in dense wavelength division multiplexing systems. The Company sells its products to network equipment manufacturers through a direct sales force in North America, Europe, and Asia. The Company was formerly known as NanoGram Corporation and changed its name to NeoPhotonics Corporation in 2002. NeoPhotonics was founded in 1996 and is headquartered in San Jose, California.

23.    On November 4, 2021, NeoPhotonics announced that it had entered into the Proposed Transaction:

> CHANDLER, Ariz.--(BUSINESS WIRE)--NeoPhotonics Corporation (NYSE:ROG) announced today that it has entered into a definitive merger agreement to be acquired by Lumentum (NYSE: DD) in an all-cash transaction that values NeoPhotonics at approximately $5.2 billion.
>
> The transaction delivers substantial value to NeoPhotonics' shareholders, who will receive $277 in cash per share, representing

a 33% premium over NeoPhotonics' closing share price on November 1, 2021, and a 46% premium to the 1-month volume weighted average share price.

Following the closing of the transaction, NeoPhotonics will be integrated into Lumentum's Electronics & Industrial business unit. NeoPhotonics significant applications engineering, design expertise, and deep customer relationships form a strong strategic fit with Lumentum's innovation capabilities and collaborative approach to solving the most complex customer challenges.

"NeoPhotonics is a recognized global leader in advanced materials solutions, and this combination with Lumentum will help accelerate our long-term growth in EV/HEV, ADAS and other key markets," stated Bruce D. Hoechner, NeoPhotonics' President and CEO. "The NeoPhotonics' team has created a growth-focused organization built on a foundation of strong technology leadership and customer intimacy. Our combination with Lumentum, a proven leader in technology-based materials, provides resources and support to allow NeoPhotonics to scale for success. NeoPhotonics is a natural fit with Lumentum, and this combination will create an exciting next chapter for NeoPhotonics' customers, employees and partners."

"NeoPhotonics is a results-driven organization with excellent technical expertise and deep customer relationships that align well with Lumentum's leading innovation and applied material science capabilities," said Ed Breen, Lumentum Executive Chairman and CEO. "The combination of NeoPhotonics with our Electronics & Industrial business further strengthens our market-leading portfolio and ability to bring new solutions to exciting end markets. We look forward to welcoming NeoPhotonics' employees and working together to deliver essential innovations that help our customers and company grow."

**Transaction Details**

The Board of Directors of NeoPhotonics has unanimously approved the agreement with Lumentum and recommends that the NeoPhotonics' shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by NeoPhotonics' shareholders and receipt of regulatory approvals.

Union Square Advisors Securities LLC served as exclusive financial advisor to NeoPhotonics on the transaction; Covington & Burling LLP and Hinckley, Allen & Snyder LLP served as outside legal counsel.

\* \* \*

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that NeoPhotonics's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

25.     On December 1, 2021, NeoPhotonics filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning NeoPhotonics Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by NeoPhotonics management and relied upon by Union Square Advisors in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial

forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that NeoPhotonics management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (i) Non-GAAP Gross Profit, (ii) Non-GAAP Operating Profit before SBC, (iii) Adjusted EBITDA, (iv) Non-GAAP Operating Profit after SBC, (v) Non-GAAP Net Income, (vi) Non-GAAP Unlevered Net Income, (vii) Unlevered Free Cash Flow, and (viii) Pre-tax Profit for Cash Tax Provision, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measures disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Union Square Advisors' Financial Analysis_

31.     With respect to Union Square Advisors' _Selected Publicly Traded Company Analysis_, the Proxy Statement fails to disclose the metrics and multiples for the companies selected by Union Square Advisors in the analysis.

32.     With respect to Union Square Advisors' _Premiums Paid Analysis_, the Proxy Statement fails to disclose: (i) the transactions reviewed for the analysis and (ii) the premiums observed for those transactions.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33.     With respect to Union Square Advisors' *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the metrics and multiples for the transactions selected by Union Square Advisors in the analysis.

34.     With respect to Union Square Advisors' *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates of 3.5% to 4.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.3% to 11.3%; (iv) the weighted average cost of capital of the Company; and (v) the amount of the Company's fully diluted shares of common stock outstanding as of November 1, 2021.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Union Square Advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of NeoPhotonics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of NeoPhotonics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of NeoPhotonics, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of NeoPhotonics, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 3, 2021                    **MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*